IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARVEY BROADUS, | CIVIL ACTION NO. |
| | 2:16-CV-00751-AJS |
| Plaintiff, | |
| v. | |
| CORRECT CARE SOLUTIONS, INC.; MICHAEL HERBIK, D.O., c/o STATE CORRECTIONAL INSTITUTE AT FAYETTE, | **JURY TRIAL DEMANDED** |
| Defendants | |

**BRIEF IN SUPPORT OF MOTION OF DEFENDANTS, CORRECT CARE SOLUTIONS, LLC AND MICHAEL HERBIK, D.O., TO PRECLUDE, IN PART, THE TESTIMONY OF PLAINTIFF'S PROPOSED EXPERT, KENNON TUBBS, M.D.**

## I.  INTRODUCTION

Plaintiff alleges that Dr. Herbik and the staff employed by Correct Care Solutions, LLC, at the State Correctional Institution--Fayette negligently mismanaged his peripheral vascular disease in the first half of September 2014 causing him to have to undergo a left below-the-knee amputation.  Kennon Tubbs, M.D. was identified by Plaintiff as an expert in this case.  Dr. Tubbs purports to render opinions on both the standard of care as well as on causation.  Based on Dr. Tubbs' discovery deposition testimony, his opinions relative to causation are not within his area of alleged expertise (family medicine) and do not satisfy the requirements of Daubert.

## II.  STATEMENT OF FACTS

Mr. Broadus disclosed Dr. Kennon Tubbs as his expert witness and provided a report authored by Dr. Tubbs dated December 29, 2015.

In his report, Dr. Tubbs, a family medicine specialist, purports to opine that the mismanagement of Mr. Broadus's peripheral vascular disease was the cause of the amputation.

Causation in this case, by Dr. Tubbs' own admission during his discovery deposition taken on August 1, 2017 in Salt Lake City, Utah, is a subject beyond his expertise.[1]

Dr. Tubbs is not a vascular medicine specialist and he does not practice vascular surgery. Dr. Tubbs has never done research or published articles with respect to peripheral vascular disease.

Indeed, during his deposition, Dr. Tubbs had to read from excerpts from vascular surgery articles taken from medical journals, which excerpts were marked collectively as Exhibit 3, in order to support his testimony.

Dr. Tubbs testified that he would not contradict anything a vascular surgeon said, including that he would not take issue with any opinion contained in the April, 2017 report of Defendants' vascular surgery expert, Thomas Naslund, M.D. Dr. Naslund's opinion is that the Defendants' alleged delay in treatment did <u>not</u> cause Mr. Broadus to have to undergo amputation.

### III.   LEGAL STANDARD

#### A. The Daubert Standard

The burden is on the proponent to establish the admissibility of proffered testimony by a preponderance of the evidence. <u>Padillas v. Stork-Gamco, Inc.</u>, 186 F.3d 412, 418 (3d Cir. 1999). Accordingly, Plaintiff must establish a record, utilizing the factors set forth in Rule 702, sufficient to allow the Court to conclude that the opinions offered by Dr. Tubbs are reliable under the analytical framework established under <u>Daubert</u>, and Rule 702. <u>Id.</u> (3d Cir. 1999)(proponent bears burden of establishing admissibility by a preponderance of evidence).

---

[1] Defense counsel's return flight from deposing Dr. Tubbs on August 1, 2017 in Salt Lake City, Utah landed in Pittsburgh precisely at 12:00 a.m. on August 2, 2017. Though <u>Daubert</u> Motions were due on August 1, 2017, this Motion is being prepared as soon following Dr. Tubbs' deposition as is practicable and it is respectfully submitted that Plaintiff is not prejudiced by this filing a few hours after the filing deadline. Defendants also respectfully request leave to supplement this Motion upon receipt of the transcript of Dr. Tubbs' deposition.

Federal Rule of Evidence 702 provides that where scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702.

The Third Circuit interprets the requirements of Rule 702 as focusing on a "trilogy of restrictions on expert testimony: qualification, reliability, and fit." Calhoun v. Yamaha Motor Corp., U.S.A., 350 F.3d 316, 321 (3d Cir. 2003) (internal citations omitted) see also Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd., 286 F.R.D. 266, 269 (W.D. Pa. 2012) (internal citations omitted).   First, the witness must possess specialized expertise qualifying him or her to testify as an expert. Calhoun, 350 F.3d at 32.  Second, the testimony must be reliable, that is, "the expert's opinion must be based on 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have good grounds for his or her belief." Id., quoting Daubert, 509 U.S. at 590. Finally, the expert testimony must "fit," meaning that it "must be relevant for the purposes of the case and must assist the trier of fact." Calhoun, 350 F.3d at 321(internal citations omitted).

## IV.  ARGUMENT

### Dr. Tubbs is not qualified to render an opinion on causation because, by his own admission he does not have the requisite "scientific, technical, or specialized knowledge."

The first test under Fed. R. Evid. 702 is whether the proffered expert is qualified.  There is no bright-line rule for determining whether a given witness is qualified to offer expert testimony. Rather, the decision is inherently case-specific and therefore lies within a court's discretion.   Nevertheless, Rule 702 does offer a basic framework for evaluating a witness's qualification by providing that

expertise must be established by one or more of the following bases: knowledge, skill, experience, training, and education. Dychalo v. Copperloy Corp., 78 F.R.D. 146, 147 (E.D. Pa. 1978).

In Estate of Gilliam v. City of Prattville, a physician, a general practitioner in internal medicine, sought to testify that the decedent's cardiac arrest was caused by the use of tasers. 667 F. Supp. 2d 1276, 1297 (M.D. Ala. 2009). However, the Court found the physician was not qualified to testify as an expert witness in this specific case as he was not "board certified in cardiology, toxicology, psychology, substance abuse, electro-physiology, or forensic pathology--all subjects that come to bear in this case and in [plaintiff's] particular theory of the case. Id.

The plaintiff's sole argument in favor of admissibility, was that as a "licensed medical physician and general practitioner, he was nonetheless qualified to testify about most, if not all, medical issues, even without any other indicia of specialization."[2] Id. The Alabama District Court noted that allowing the physician to take the stand would do nothing more than to confuse the jury. Id.

The Third Circuit has routinely disqualified expert witnesses for lack of qualifications. See Higginbotham v. Volkswagenwerk Aktiengesellschaft, 551 F. Supp. 977, 982-83 (M.D. Pa. 1982) (finding that an investigating officer was not qualified to offer an expert opinion regarding the

---

[2] Notably, courts are split on whether to admit the testimony of a witness who has general knowledge in the field. Some courts have determined that general knowledge in a field is sufficient to render an expert qualified in the proffered field's specialties as well, and allow a general practitioner to offer expert testimony concerning medical conditions routinely treated by specialists. See, e.g., Payton v., Abbott Labs., 780 F.2d 147, 155 (1st Cir. 1985) (holding that two board-certified obstetrician--gynecologists were qualified to offer expert testimony in teratology, the study of abnormal development). These courts hold that a witness's lack of specialization goes only to the weight of the testimony and not to qualifications. However, other courts have disagreed and have not allowed generalists to testify on specialty areas when their lack of expertise in those areas would mean that they could not assist the trier of fact. See, e.g., Chikovsky v. Ortho Pharm. Corp., 832 F. Supp. 341 344-46 (S. D. Fla. 1993) (holding that a board-certified obstetrician--gynecologist was not qualified to offer expert testimony that the topical application of Retin-A causes birth defects because the physician had no demonstrated expertise in embryology, teratology, or genetics).

movement of a person inside a vehicle during an accident because the officer only had minimal training in accident reconstruction, physics, and the movement of bodies), aff'd, 720 F.2d 662 (3d Cir. 1983); Globe Indem. Co. v. Highland Tank & Manuf. Co., 345 F. Supp. 1290, 1291-92 (E.D. Pa. 1972) (holding that neither an electrical engineer nor an industrial hygienist was qualified to testify as an expert regarding the design of a molasses storage tank where neither had any experience or knowledge in the field of storage tank design), aff'd, 478 F.2d 1398 (3d Cir. 1973).

Dr. Tubbs' opinions regarding causation do not meet the reliability standards set forth in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), and incorporated into Federal Rule of Evidence 702.  Accordingly, any testimony which Plaintiff may offer from Dr. Tubbs on the issue of the medical causation of Plaintiff's amputation should be disallowed.[3]

Dr. Tubbs is not qualified to offer causation opinions in this case.  His board certification is in family medicine.[4]  His clinical practice consists of working in various correctional institutions treating inmates, similar to a general family practice.  Dr. Tubbs does not practice vascular surgery or vascular medicine or have any qualifications in that field.

Several courts have addressed whether a general practitioner of medicine possesses the relevant qualifications to render an opinion in an area of specialization.  Courts in the Third Circuit have

---

[3] There were several instances during Dr. Tubbs' discovery deposition where Plaintiff's counsel conceded that Defendants' counsel's questions seeking to explore and test Dr. Tubbs' opinions on causation were "beyond Dr. Tubbs' expertise."  Therefore, it could be that court involvement will not be necessary and that the parties may be able to resolve this issue on their own.  Indeed, Plaintiff has identified a vascular surgery specialist, Russell Samson, M.D. from Florida, as an expert.  Dr. Samson's discovery deposition is scheduled to be taken on August 15, 2017.  Dr. Samson's expected testimony on causation would render any causation opinion proffered by Dr. Tubbs cumulative anyway.

[4] Dr. Tubbs allowed his board certification in family practice medicine to lapse in approximately 2007 because the prison system he was working for at the time refused to agree to reimburse him for the cost of taking the test and Dr. Tubbs did not want to pay for it out of his own pocket.  Dr. Tubbs sat for the test again in 2016 and because recertified.

noted that "[a] pediatrician is not an expert in orthopedics merely because both are doctors in medicine; a pulmonologist cannot claim to be an expert as a pharmacologist and a toxicologist as well as a physician." Betterbox Communs., Ltd. v. BB Techs., Inc., 300 F.3d 325, 335 (3d Cir. 2002) citing Diaz v. Johnson Matthey, Inc., 893 F. Supp. 358, 373 (D.N.J. 1995).

Dr. Tubbs' work as a general practitioner does not qualify him, by his own admission, to render vascular medicine and surgery opinions.

## CONCLUSION

Based on the foregoing, Dr. Tubbs is not qualified to render an opinion on causation in this case. Defendants request a ruling that Dr. Tubbs' testimony, if any, be confined to whether the medical care providers met the applicable standard of care.

    Respectfully submitted,

    /s/Donald H. Smith
    Donald H. Smith
    LEWIS BRISBOIS BISGAARD & SMITH
    429 Fourth Avenue, Suite 805
    Pittsburgh, PA 15219
    (412) 567-5596 Telephone

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the Court's ECF system this 2nd day of August, 2017 on:

>Brendan B. Lupetin, Esquire
>Meyers Evans Lupetin & Unatin, LLC
>The Gulf Tower, Suite 3200
>707 Grant Street
>Pittsburgh, PA 15219
>blupetin@meyersmedmal.com
>*Counsel for Plaintiff*

>Respectfully submitted,
>
>DONALD H. SMITH
>LEWIS BRISBOIS BISGAARD & SMITH LLP
>
>
>By:    /s/Donald H. Smith
>Donald H. Smith
>Attorneys for Defendants, Correct Care Solutions, LLC and Michael Herbik, D.O.

4815-9047-7900.1